*Ex Parte:* GEORGE SARROS

156 So. 396.
En Banc.
Opinion Filed August 3, 1934.

*J. T. Chancey,* for Petitioner;
*Whitaker Brothers, Contra.*

BUFORD, J.—This is an original proceeding in habeas corpus.

The petitioner filed his petition before this Court alleging that he was unlawfully held in custody under warrant issued out of the Court of the Third Justice of the Peace District of Hillsborough County, Florida, in which it was charged that on the 10th day of July, 1934, George Sarros "did engage in, conduct, carry on and dispense and retail medicinal drugs, medicinal chemicals and pharmaceutical preparations, in that on the said 10th day of July, 1934, the said George Sarros did, in Hillsborough County, Florida, offer for sale and sell to deponent for a cash consideration which was paid by deponent, the following:

"1 bottle of Mifflin rubbing alcohol;
"1 bottle of McNeil's Magic remedy;
"1 bottle of Dr. Porter's Antiseptic healing oil;
"1 bottle of spirits of Turpentine;
"1 bottle of Diamond antiseptic, containing Bichloride of Mercury, and being poison;
"1 bottle of Syrup of Figs;
"1 bottle of Lysol;
"1 bottle of Skin Tonic;

"1 bottle of Peroxide;

"1 bottle of Epsom Salts;

"1 bottle of Castoria;

"1 bottle of Vick's Vapor Rub;

"1 bottle of Vivani Lotion;

"1 bottle of Bay Rum;

"1 box of Noxzema Skin Cream;

"1 box of Potassoin Permanganate; containing poison and marked on said box as dangerous and poisonous;

"1 bottle of Listerine;

"1 bottle Creolin disinfectant antiseptic, and containing poisonous ingredients;

"2 packages of B C headache tablets; each powder of which contains four grains of acetanilid, which is poisonous and a strong heart stimulant;

"1 bottle Vivani Hair Tonic;

"1 bottle of Vivani Skin Astringent;

"2 boxes of blue ointment, which contains dangerous poison and bearing a label of poison;

"1 box of Vivani deodorant;

"2 packages of Stark's headache powders, which contains six grains of acetanilid in each powder, acetanilid being a strong heart stimulant;

"1 box of Aspirin tablets;

"1 box of Rough-on-Rats, being a highly poisonous preparation and labeled dangerous and poisonous;

"1 box of Dr. Palmer's Skin whitener;

"2 bottles of tincture of Iodine, which is highly poisonous and labeled dangerous and poisonous;

"2 bottles of extract Witchhazel;

"1 bottle of spirits of Camphor;

"1 bottle of Aromatic spirits of Ammonia;

"1 bottle of Sweet Spirits of Nitre;

"1 bottle of Carbolic Acid, which is a dangerous poison and labeled poison and dangerous;

· "3 bottles of Mercurochrome.

"Deponent states that he purchased the foregoing articles from the said George Sarros on the 10th day of July, 1934, at the place of business of said George Sarros, located at 905 Tampa Street in the City of Tampa, Florida, and paid for each of said items in cash; that each and every of the foregoing named preparations or medicines are in fact a medicinal drug and pharmaceutical preparation; that the said George Sarros does not operate a drug store, but operates and conducts a restaurant in which he keeps on hand for sale to the public medicinal and pharmaceutical compounds and preparations of the nature and character hereinabove set out, as well as other similar pharmaceutical preparations.

"Deponent further states that the said George Sarros is not a registered pharmacist and that he does not have a registered pharmacist employed in the operation and conduct of said business located at 905 Tampa Street, and that the sales hereinabove mentioned were made by the said George Sarros who is not a licensed registered pharmacist and that said sales were not made under the supervision or direction, immediate or otherwise, of a registered pharmacist. Deponent further states that the said George Sarros is engaged in the business of conducting, carrying on, dispensing and retailing medicinal drugs and pharmaceutical preparations as hereinabove set out in conjunction with the restaurant business conducted by him, and that the said George Sarros is not a registered pharmacist and he has employed in said business no registered pharmacist in connection with the conduct and operation of said business, and the same is operated under the style of and license paid for the operation of a

business of restaurant and general merchandise, without any connection with any drug store whatsoever."

The prosecution was based upon the provisions of Chapter 13757, Acts of 1929, which was an attempted amendment to Section 2218 R. G. S., being Section 3529 C. G. L. of Florida. Section 2218 R. G. S., was originally Section 7 of Chapter 6890, Acts of 1815, which Act was, as its' title indicates, "An Act to regulate the practice of Pharmacy in the State of Florida." Section 7 of the Act was as follows:

"Sec. 7. It shall be unlawful for anyone, except a registered pharmacist under this Act, who shall conform to the rules and regulations of the said Board of Pharmacy, to take, use or exhibit the title 'Pharmacist,' 'druggist,' 'Pharmacy,' and 'drug store,' or to have charge of, engage in or carry on, for himself or for another, the dispensing, compounding or sale of drugs, medicines or poisons anywhere within the State, except as' otherwise in this Act provided, and no registered pharmacist shall have personal supervision of more than one pharmacy or drug store at the same time; and except as prescribed by the provisions of this Act, it shall not be lawful for any person to practice as a registered pharmacist or advertise himself by sign or otherwise to be such, or to engage in, conduct, carry on or be employed in the dispensing, compounding or retailing of drugs, medicines or poisons within this State; provided that this section shall not be construed as precluding any person from owning a drug store or pharmacy if all of the pharmaceutical work in the same shall be constantly under the immediate supervision and direction of a registered pharmacist."

Section 6 of that Act was as follows:

"Sec. 6. Nothing in this Act shall apply to the practicing of a legally authorized practitioner of medicine from practicing, dispensing, compounding for or giving any medicines

or poisons to his patients in the regular course of· his prac-
tice as such physician, nor shall this Act apply to the sale
by merchants of paris green, white hellebore and other
poisons for destroying insects, or to the sale of any substance
for the use in the Arts, or to the sale of ammonia, asafoet-
ida, alum, bicarbonate of soda, borax, camphor, castor oil,
cream of tartar, dye stuffs, essence of ginger, essence of
peppermint, essence of wintergreen, non-poisonous flavoring,
essences of extracts, glycerine, licorice, olive oil, sal am-
moniac, saltpetre, sal soda, sulphur, blue vitriol, brimstone,
pepper, sage, senna leaves, sweet oil, spirits of turpentine,
paregoric, Glauber's salts, epsom salts, hive syrup, syrup of
ipecac, tincture of arnica, syrup of tolu, syrup of squills,
spirits of camphor, sweet spirits of nitre, quinine and all
other preparations of cinchona bark, tincture of aconite
and tincture of iron, compound cathartic pills and other
household remedies; and merchants may sell in the original
bottle, box or package, any drugs, medicines, chemicals, es-
sential oils or tinctures which are put up by pharmacists in
bottles, boxes of packages, bearing a label securely affixed,
which label shall bear the name of the pharmacist putting
up the same, the dose that may be administered to person
three months, six months,· one year, three years, five years,
ten years, fifteen years and twenty-one years of age and if
a poison, the name or names of the most prominent anti-
dotes.   Such merchants may sell any patent or proprietary
medicines."

· These sections, when taken together, show conclusively
that the Act was one to regulate the practice of pharmacy
and not one to regulate the sale of drugs in original pack-
ages.

In 1927 Section 2218 R. G. S., which was originally Sec-
tion 7 of Chapter 6890, *supra,* was amended by Chapter

12193. This amendment merely added to Section 7 the following:

"The provisions of this Act shall not apply to stores or places of business where physician's prescriptions are not compounded and where patent and proprietary or common household remedies are sold in the original package."

This resulted in making Section 7 conform to the provisions of Section 6 of Chapter 6890, *supra,* the same being Section 2217 R. G. S., 3528 C. G. L. The latter section stands as it was originally enacted. The amendment by Chapter 13757, Acts of 1929, was entitled:

"An Act to Amend Section 2218 of the Revised General Statutes, Being Section 3529 of the Compiled General Laws of Florida, 1927, Relating to the Practice of Pharmacy, and Prohibiting the Use of Certain Signs in Connection Therewith."

The amendment read as follows:

"Section 2218 (3529). It shall be unlawful for anyone, except a registered pharmacist under this chapter who shall conform to the rules and regulations of the said Board of Pharmacy, to take, use or exhibit the title 'Pharmacist,' 'Druggist,' 'Pharmacy,' 'Drug Store,' or any other title, sign, display or declaration, that would tend to lead the public to believe that such person was engaged in the business of selling, compounding or dispensing any medicinal drugs, medicinal chemicals, pharmaceutical preparations, and/or biologicals, or to have charge of, engage in or carry on, for himself or for another, the dispensing, compounding or sale of any medicinal drugs, medicinal chemicals, pharmaceutical preparations and/or biologicals anywhere within the State, and no registered pharmacist shall have personal supervision of more than one pharmacy or drug store at the same time; and, except as prescribed by the provisions of this chapter, it shall not be lawful for any person to prac-

tice as a registered pharmacist, or advertise or represent himself by any title, sign, display, and/or declaration or otherwise to be such, or to engage in, conduct, carry on, or be employed in the dispensing, compounding or retailing of any medicinal drugs, medicinal chemicals, pharmaceutical preparations and/or biologicals within this State; Provided, that this section shall not be construed as precluding any person from owning a drug store or pharmacy, if all the dispensing, compounding, and/or retailing of medicinal drugs, medicinal chemicals, pharmaceutical preparations and/or biologicals in the same shall be constantly under the immediate supervision and direction of a registered pharmacist."

The contention is, (1st) that the Act violates Section 16, Article III of the Constitution. The further contention is made that if the provisions of the Act prohibiting the sale of drugs in original packages by anyone except a registered pharmacist come within the purview of the title of the Act, then the Act is void because it is arbitrary and unreasonable. We shall only discuss the first question.

It is contended by the petitioner that he is not charged with having done anything more than having sold at retail such patent or proprietary medicines as he might have lawfully sold under the provisions of Section 6 of Chapter 6890, Section 2217 R. G. S., 3528 C. G. L., except for the provisions contained in the 1929 amendment, Chapter 13757, *supra*. If we should construe the provisions of Chapter 13757, *supra,* as prohibiting the sale of the drugs and medicines and condiments named in the affidavit when not sold under the immediate supervision and direction of a registered pharmacist, then it would be necessary for us to hold that the title of the Act failed to comply with the provisions of Section 16, Article III of the State of Florida, because it would then appear that the subject of the Act is the reg-

ulation of the sale at retail of patent and proprietary medicines and that it by implication repealed Section 2217 R. G. S., 3528 C. G. L., and that the title is misleading because the title purports to be, and is limited to, matters relating to the practice of pharmacy and prohibiting the use of certain signs in connection therewith. The title of the Act directs the attention of the observer to regulations governing those who practice the profession of pharmacy and to the prohibition of the use of certain signs in connection with the practice of such profession.

In the case of Sheip *et al.,* v. Amos, 100 Fla. 863, 130 Sou. 699, Mr. Justice Strum, speaking for the Court, said:

"It has been held that one of the principal purposes of Article III, Sec. 16, of the Constitution is to avoid surprise, fraud or stealth in legislation resulting from the use of misleading titles, or the inclusion of incongruous and unrelated matters in the same measure. State *ex rel.* Crump v. Sullivan, 128 So. R. 478. The requirement is that the title, taken as a whole, must be sufficient by fair intendment to cover the subject matter of the Act, and must not be so worded as to mislead 'an ordinary mind' as to the real purpose and scope of the enactment. *In Re:* DeWoody, 94 Fla. 96, 113 So. R. 677.

"In view of the fact that the Legislature is accorded wide discretion in the selection of titles, the language employed in the title should not receive a narrow or technical construction but should be construed liberally. The courts attentively enforce the constitutional provision just mentioned in cases which lie within the reason therefor, but the freedom required for the effective exercise of the legislative power will not be interfered with lightly or unnecessarily. The courts disregard mere verbal inaccuracies, resolve reasonable doubts in favor of validity, and hold generally that in order to warrant condemnation of enactments for failure

to comply with the rule under discussion, the violation must be substantial and plain. See Pasados v. Warner, 279 U. S. 340, 73 L. Ed. 729; *Ex Parte* Pricha, 70 Fla. 265, 70 So. Rep. 406; State v. Vestel, 81 Fla. 625, 88 So. R. 477; F. E. C. Ry. Co. v. Hazel, 43 Fla. 263, 31 So. R. 272; State v. Bryan, 50 Fla. 293, 39 So. R. 929."

And again in that opinion, he said:

"To be misleading involves an element of deception, something which deliberately leads the mind into error. In the case of a title, this means an ordinary mind—not the mind of a precisionist weighing the refinements of language in technical aspect, but a mind following the common import of language in contemporary expression. Moreover, component words of the title are not to be isolated in their abstract meaning, but are to be taken in fair collaboration with the entire context of the title."

In South Fla. Trust Co. v. Miami Coliseum Corporation, *et al.,* 101 Fla. 1351, 133 Sou. 334, we said:

"It has been repeatedly held in this State that portions of an Act may be declared unconstitutional and the rest held valid, and that courts will not pass upon the constitutionality of a portion of an Act not before it. Harper v. Galloway, 58 Fla. 255, 51 So. 226, 26 L. R. A. (N. S.) 794, 19 Ann. Cas. 235; Lainhart v. Catts, 73 Fla. 735, 75 So. 47; Gwynn v. Hardee, 92 Fla. 533, 110 So. 343; Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449." See also Sawyer *et al.,* v. State, 100 Fla. 1603, 132 Sou. 188.

The Relator relies on the opinion and judgment in the case of Spencer v. Hunt, 109 Fla. 248, 147 Sou. 282, to uphold the validity of the title of this Act, but there is a vast difference between the infirmity of the title of this Act and the infirmity which was contended for in the title to the Act under consideration in the Spencer v. Hunt case. There we followed the same rule which has been applied in

the other cases, that is, that only the subject, and not matters properly connected therewith, is required by the Constitution to be expressed in the title of the Act and that when the title of the Act expresses its subject with such sufficient certainty as to give reasonable notice of matters dealt with by the Act and of its scope, and reasonably leads to inquiry as to its contents, though not an index to the Act as to its relative provisions, it is sufficient. And in that case we held that the title met the requirement of Section 16, Article III of the Constitution. But here the title to the Act is misleading because the subject matter of this Act when taken alone is the regulation of the sales of drugs and medicines, while the title declares it to be an Act relating to the practice of pharmacy and there is nothing in the title of the Act which indicates that it proposes to repeal by implication the provisions of another section of the statute which by its terms specifically authorized merchants generally to sell at retail in the original box or package "any drugs, medicines, chemicals, essential oils or tinctures which are put up by pharmacists in bottles, boxes or packages, bearing a label securely affixed, which label shall bear the name of the pharmacist putting up the same, the dose that may be administered to persons three months, six months, one year, three years, five years, ten years, fifteen years and twenty-one years of age, and if a poison, the name or names of the most prominent antidotes. Such merchants may sell any patent or proprietary medicines."

The practice of "Pharmacy" according to Webster's New International Dictionary is the art of the practice of preparing and preserving drugs and of compounding and dispensing medicines according to the prescriptions of physicians; the occupation of an apothecary or pharmaceutical chemist. The noun "Pharmacy" has another meaning with which we are not here concerned.

It it not, however, necessary for us to hold that this amendatory Act violates the provision of Section 16 of Article III of the Constitution because it purports to amend a certain section of Revised General Statutes, to-wit Section 2218, and that section was a part of Chapter 22 R. G. S. The amendment when written into that statute becomes a part of the statute as if it had been originally written therein and the words "this chapter" must be construed not to refer to the chapter number which would be given to the legislative amendatory Act of 1929 but to the chapter of. Revised General Statutes in which this section appears.

And so it is, that when we read the amendatory Act in connection with Chapter 22 R. G. S. and see that the amendatory Act reads: "except as prescribed by the provisions of this chapter it shall be unlawful for any person * * * or to engage in, conduct, carry on or be employed in the dispensing, compounding or retailing of any medicinal drugs, medicinal chemicals, pharmaceutical preparations and/or biologicals in this State" we see that the amendatory Act excludes from the provisions thereof all those who are excepted from those provisions by the terms of other provisions of Chapter 22 R. G. S., 24 C. G. L.

It is the duty of the court to hold legislative Acts valid if the Act can be reasonably construed so as to be held valid. Therefore, we hold that the amendatory Act of 1929 here under consideration did not, by implication or otherwise, repeal Section 2217 R. G. S., 3528 C. G. L., but that it in terms limited its scope and effect to those matters and things which were not permitted under the provisions of that section and, so holding, we hold that the affidavit and warrant under which the petitioner is charged and held contains no allegation charging any criminal offense against the laws of the State of Florida.

98

It, therefore, follows that the petitioner should be discharged from custody.

It is so ordered.

DAVIS, C. J., and WHITFIELD, TERRELL and BROWN, J. J., concur.