416 So.2d 455 (1982)
DEPARTMENT OF EDUCATION, State Board of Education, Ralph D. Turlington, As Commissioner of Education and As Citizen and Taxpayer, and Talbot D'Alemberte, a Citizen and Taxpayer, Appellants,
v.
Gerald A. LEWIS, Comptroller, and George Firestone, Secretary of State, Appellees.
No. 61241.
Supreme Court of Florida.
July 15, 1982.
*457 James D. Little, Gen. Counsel, and Judith A. Brechner, Deputy Gen. Counsel, State Bd. of Educ., and Chesterfield Smith and John Radey of Holland & Knight, Tallahassee, for Dept. of Educ., State Bd. of Educ. and Ralph D. Turlington.
Talbot D'Alemberte and Thomas R. Julin of Steel, Hector & Davis, Miami, for Talbot D'Alemberte.
Michael J. Coniglio, Deputy Comptroller and Michael Basile, Gen. Counsel, Office of the Comptroller, Tallahassee, for Gerald A. Lewis.
Jim Smith, Atty. Gen., and Mitchell D. Franks and Thomas R. Tedcastle, Asst. Attys. Gen., Tallahassee, for George Firestone.
Steven G. Wenzel, Vice President for Employee Relations and Legal Affairs, Tampa, and W. Reece Smith, Jr., Sylvia H. Walbolt and Mark A. Brown of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for John Lott Brown, President of the University of South Florida and Daniel R. Walbolt, as Vice President of Student Affairs of the University of South Florida, amicus curiae.
BOYD, Justice.
This case is here on the certification of the District Court of Appeal, First District, that the trial court judgment appealed to *458 that court is of great public importance and requires immediate resolution by the Supreme Court. We have jurisdiction under article V, section 3(b)(5), Florida Constitution.
House Bill No. 30-B was the general appropriations bill adopted by the 1981 Legislature and became law as chapter 81-206, Laws of Florida. The appropriations for the Department of Education and the Commissioner of Education were prefaced by the following proviso:
No funds appropriated herein shall be used to finance any state-supported public or private postsecondary educational institution that charters or gives official recognition or knowingly gives assistance to or provides meeting facilities for any group or organization that recommends or advocates sexual relations between persons not married to each other.
Sexual relations means contact with sexual organs of one person by the body of another person for sexual gratification. Any postsecondary educational institution found in violation of this provision shall have all state funds withheld until that institution is again in compliance with the law.
No state financial aid shall be given to students enrolled at any postsecondary educational institution located in Florida which is in violation of this provision.
Ch. 81-206, § 1, Laws of Fla.
The Florida Department of Education, the State Board of Education, and Commissioner of Education Ralph D. Turlington filed a complaint seeking a declaratory judgment that the above-quoted proviso is unconstitutional and void. Named as defendants were Comptroller Gerald Lewis and Secretary of State George Firestone. The complainants challenged the constitutionality of the proviso under article III, section 12 of the Florida Constitution as well as under freedom of expression principles embodied in the Florida and United States Constitutions.
Talbot D'Alemberte, a trustee of Miami-Dade Community College, filed a motion to intervene as a party plaintiff. The trial court granted the motion based on D'Alemberte's status as a citizen and taxpayer. The defendants in their answers to the complaint questioned the standing of the Department of Education, the State Board of Education, and Turlington in his official capacity as Commissioner of Education, to bring the suit. After declining to dismiss these plaintiffs, the trial court granted judgment for the defendants and upheld the proviso against all contentions of invalidity.
Before reaching the merits of the case, we must resolve the question of standing to sue.
In the court below, the appellees challenged the appellants' standing to seek a determination that the proviso is unconstitutional. While we find the individual appellants to have such standing as ordinary citizens and taxpayers, they have no standing in their official capacities. State officers and agencies must presume legislation affecting their duties to be valid, and do not have standing to initiate litigation for the purpose of determining otherwise. Barr v. Watts, 70 So.2d 347 (Fla. 1953); City of Pensacola v. King, 47 So.2d 317 (Fla. 1950); State ex rel. Watson v. Kirkman, 158 Fla. 11, 27 So.2d 610 (1946); State ex rel. Atlantic Coast Line R.R. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922). In such a situation, the public officer or agency does not have a sufficiently substantial interest or special injury to allow the court to hear the challenge.
If, on the other hand, the operation of a statute is brought into issue in litigation brought by another against a state agency or officer, the agency or officer may defensively raise the question of the law's constitutionality. City of Pensacola v. King, 47 So.2d 317 (Fla. 1950); State ex rel. Harrell v. Cone, 130 Fla. 158, 177 So. 854 (1937); State ex rel. Florida Portland Cement Co. v. Hale, 129 Fla. 588, 176 So. 577 (1937). The comptroller is one officer that has been allowed by Florida courts to initiate litigation in his official capacity seeking to establish the unconstitutionality *459 of a statute. See Dickinson v. Stone, 251 So.2d 268 (Fla. 1971); Green v. City of Pensacola, 108 So.2d 897 (Fla. 1st DCA 1959), aff'd, 126 So.2d 566 (Fla. 1961). It has also been recognized that the attorney general may, in limited circumstances, initiate litigation to challenge the constitutionality of legislation. See Department of Administration v. Horne, 269 So.2d 659 (Fla. 1972); State ex rel. Landis v. S.H. Kress & Co., 115 Fla. 189, 155 So. 823 (1934); State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 So. 929 (1905). The comptroller, as the state's chief officer for disbursement of funds, would have standing to challenge a proviso in an appropriations bill. But the Department of Education, the State Board of Education, and the Commissioner of Education in his official capacity, do not.
As ordinary citizens and taxpayers, however, appellants Turlington and D'Alemberte have standing to challenge the constitutionality of the proviso. In making their challenge, the appellants invoke two constitutional prohibitions: article III, section 12, Florida Constitution, governing appropriations acts; and the state and federal constitutional prohibition against state action abridging the freedoms of speech and association. Both challenges relate to the power of the legislature to tax and spend for the general welfare of the state as embodied in the appropriations bill. The proviso is challenged as an abuse of appropriations process and as an invalid directive to the postsecondary school administrators of the state concerning the spending of state funds. Therefore, appellants as taxpayers have standing to challenge the constitutionality of the proviso. Brown v. Firestone, 382 So.2d 654 (Fla. 1980); Department of Administration v. Horne, 269 So.2d 659 (Fla. 1972); Rickman v. Whitehurst, 73 Fla. 152, 74 So. 205 (1917). Cf. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (federal taxpayers had standing to challenge statute alleged to exceed specific constitutional limits on the taxing and spending power).
With both the appropriations act restriction issue and the freedom of expression issue properly presented by proper parties, we now turn to the merits.
Article III, section 12, Florida Constitution, provides:
Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject.
This provision is a corollary of article III, section 6, which requires that all laws be limited to a single subject and matters properly related to that subject. Brown v. Firestone, 382 So.2d 654 (Fla. 1980). An extensive body of constitutional law teaches that the purpose of article III, section 6 is to ensure that every proposed enactment is considered with deliberation and on its own merits. A lawmaker must not be placed in the position of having to accept a repugnant provision in order to achieve adoption of a desired one. See, e.g., Santos v. State, 380 So.2d 1284 (Fla. 1980); State v. Lee, 356 So.2d 276 (Fla. 1978); King Kole, Inc. v. Bryant, 178 So.2d 2 (Fla. 1965); Lee v. Bigby Electric Co., 136 Fla. 305, 186 So. 505 (1939); State ex rel. Grodin v. Barns, 119 Fla. 405, 161 So. 568 (1935); Ex parte Sarros, 116 Fla. 86, 156 So. 396 (1934); McConville v. Ft. Pierce Bank & Trust Co., 101 Fla. 727, 135 So. 392 (1931); Colonial Investment Co. v. Nolan, 100 Fla. 1349, 131 So. 178 (1930); State ex rel. Crump v. Sullivan, 99 Fla. 1070, 128 So. 478 (1930).
Through a number of cases decided over many years this Court has attempted to make clear to the Legislature that under our constitutional plan for the lawful exercise of governmental powers an appropriations act is not the proper place for the enactment of general public policies on matters other than appropriations. Brown v. Firestone, 382 So.2d 654 (Fla. 1980); Thomas v. Askew, 270 So.2d 707 (Fla. 1972); Department of Administration v. Horne, 269 So.2d 659 (Fla. 1972); Dickinson v. Stone, 251 So.2d 268 (Fla. 1971); In re Advisory Opinion to the Governor, 239 So.2d 1 (Fla. 1970); Green v. Rawls, 122 So.2d 10 (Fla. 1960); Lee v. Dowda, 155 Fla. 68, 19 So.2d 570 (1944); Amos v. Moseley, 74 Fla. 555, 77 So. 619 (1918). In Brown v. Firestone, the Court said:

*460 The enactment of laws providing for general appropriations involves different considerations and indeed different procedures than does the enactment of laws on other subjects. Our state constitution demands that each bill dealing with substantive matters be scrutinized separately through a comprehensive process which will ensure that all considerations prompting legislative action are fully aired. Provisions on substantive topics should not be ensconced in an appropriations bill in order to logroll or to circumvent the legislative process normally applicable to such action. Similarly, general appropriations bills should not be cluttered with extraneous matters which might cloud the legislative mind when it should be focused solely upon appropriations matters.
382 So.2d at 664.
The opinion in Brown v. Firestone went on to establish two principles by which to test restrictions and provisos in appropriations bills to determine whether they violate article III, section 12. First, if a provision in an appropriations bill changes existing law on any subject other than appropriations, it is invalid. Second, a qualification or restriction must directly and rationally relate to the purpose of the appropriation to which it applies. The opinion elaborated on this second principle as follows:
That is to say, has the legislature in the appropriations process determined that the appropriation is worthwhile or advisable only if contingent upon a certain event or fact, or is the qualification or restriction being used merely as a device to further a legislative objective unrelated to the fund appropriated? This test possesses the dispositive virtue of permitting the legislature reasonably to direct appropriation use without hampering the gubernatorial veto power or abusing the legislative process.
382 So.2d at 664.
We now proceed to an analysis of the proviso according to the above-discussed principles. The portion or portions of chapter 81-206 to which the proviso, by its terms, logically relates includes all state funds to be expended on postsecondary education or granted to postsecondary educational institutions or students. The proviso directs that funds appropriated to such purposes shall be withheld from institutions in violation of the proviso and from students attending institutions that are in violation of the proviso. In order to avoid having state funds withheld, a postsecondary institution is required by the proviso to refrain from chartering, giving official recognition to, knowingly giving assistance to, or providing meeting facilities to, any group or organization that engages in a certain variety of expression or communication as broadly defined in the proviso. The proviso attempts to make substantive policy on the governance of postsecondary educational institutions. Thus it amends a whole host of statutes pertaining to the operation of public colleges and universities and the regulation of private colleges and universities. By effecting such a de facto amendment of existing substantive law, the proviso violates the first principle announced in Brown v. Firestone.
One of the qualifications at issue in Brown v. Firestone was a requirement that the inmate count at a particular prison be phased back to design capacity. The restriction was connected to the appropriation for salaries, expenses, and capital outlay for major institutions of the state prison system. We held that the restriction was not rationally related to the funding of the state's correctional institutions but rather was "designed to further a legislative objective ... unrelated to the funding of all the major institutions." 382 So.2d at 669.
Applying the second of the principles announced in Brown v. Firestone, we reach a similar conclusion in the present case. The proviso is not directly and rationally related to the appropriation of state funds to postsecondary institutions and students. It is, rather, designed to further a legislative objective unrelated to such funding.
Brown v. Firestone, decided over a year and a half ago, announced a new and useful formulation of principles, but the principles *461 themselves were by no means new. They have been part of Florida constitutional law for decades. In Brown v. Firestone, some of the questions were close ones. In this case the question is clear-cut. We are simply following constitutional construction well known in Florida legal and governmental circles. We hold that the proviso violates article III, section 12.
Appellants also contend that the proviso violates constitutional guarantees of freedom of speech and association under the United States and Florida Constitutions. Under the First Amendment to the United States Constitution, the United States government is prohibited from abridging the freedom of speech.[1] Under the Fourteenth Amendment, the same prohibition is applicable to state governments. Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). Freedom of association is also recognized as flowing from the First Amendment and comes within its protection. Baird v. State Bar of Arizona, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Freedom of speech is also guaranteed under article I, section 4 of the Florida Constitution.[2] The scope of the protection accorded to freedom of expression in Florida under article I, section 4 is the same as is required under the First Amendment. See Florida Canners Association v. State Department of Citrus, 371 So.2d 503 (Fla. 2d DCA 1979). This Court has no authority to limit the constitutional protection and must apply the principles of freedom of expression as announced in the decisions of the Supreme Court of the United States.
The right of persons to express themselves freely is not limited to statements of views that are acceptable to the majority of people. If it were to be held that freedom of expression applies only to views that the national, state, or local community finds to be within the range of reasonable discourse, the First Amendment would have little meaning or purpose. Democratic governments seldom seek to suppress speech that the community finds acceptable. Where the majority rules, there is usually no need for constitutional protection of the right to express views that are considered proper and reasonable by the majority. The real purpose of the First Amendment is to protect also the expression of sentiments that the majority finds unacceptable or even unthinkable. The First Amendment even protects the right to express the view that our constitutional form of government should be overthrown by illegal means. In Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), the Supreme Court held that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." 395 U.S. at 447, 89 S.Ct. at 1829 (footnote omitted). While reasonable regulations pertaining to time, place, and manner may be imposed upon the exercise of the right to public expression of views, such regulations must not be based upon the content of the speech. They must be content-neutral. Heffron v. International Society for Krishna Consciousness, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981); Police Department v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972).
*462 Appellees argue that the proviso may be sustained because it does not make criminal a certain kind of speech, as did the law at issue in Brandenburg v. Ohio, but merely withdraws state support for the expression of views which the people of the state believe will promote immorality. Appellees say that the proviso will help to maintain a suitable environment in which students and teachers may pursue their educational purposes.
The appellees' argument overlooks the fact that students and teachers may not be required to "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). A state cannot abridge freedom of speech on campus any more than it may do so off campus. "[T]he First Amendment leaves no room for the operation of a dual standard in the academic community with respect to the content of speech... ." Papish v. Board of Curators, 410 U.S. 667, 671, 93 S.Ct. 1197, 1200, 35 L.Ed.2d 618 (1973).
While a state might choose not to establish any state-supported institutions of higher learning,[3] once it has decided to do so, it may not make the privilege of attending contingent upon the surrender of constitutional rights. "Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say." Police Department v. Mosley, 408 U.S. 92, 95, 96, 92 S.Ct. 2286, 2289, 2290, 33 L.Ed.2d 212 (1972). Furthermore, freedom of speech and association "are protected not only against heavyhanded frontal attack, but also from being stifled by more subtle governmental interference." Bates v. City of Little Rock, 361 U.S. 516, 521, 523, 80 S.Ct. 412, 415, 416, 4 L.Ed.2d 480 (1960). Thus the argument that withholding of the privileges of recognition (e.g. use of campus meeting facilities) leaves students and teachers free to express any views privately, informally, and off-campus and therefore does not affect First Amendment rights is without merit.
The fact that students, teachers, and speakers sponsored by campus groups at institutions of higher learning enjoy the full protection of the First Amendment does not prevent those involved in operating such institutions from maintaining a suitable environment for carrying on the process of scholarship. In Healy v. James, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972), a student political group was denied recognition as a student organization and challenged the denial in court. The president of the college sought to justify the denial on the ground of the group's advocacy of revolutionary change and on the ground of possible disruption of the educational process. The United States Supreme Court said:
The mere disagreement of the President with the group's philosophy affords no reason to deny it recognition. As repugnant as these views may have been, especially to one with President James' responsibility, the mere expression of them would not justify the denial of First Amendment rights. Whether petitioners did in fact advocate a philosophy of "destruction" thus becomes immaterial. The College, acting here as the instrumentality of the State, may not restrict speech or association simply because it finds the views expressed by any group to be abhorrent. As Mr. Justice Black put it most simply and clearly:
"I do not believe that it can be too often repeated that the freedoms of speech, press, petition and assembly guaranteed by the First Amendment must be accorded to the ideas we hate or sooner or later they will be denied to the ideas we cherish." Communist Party v. SACB, 367 U.S. 1, 137, 81 S.Ct. 1357, 1431, 6 L.Ed.2d 625 (dissenting opinion) (1961).
Id. 408 U.S. at 187-88, 92 S.Ct. at 2349. The Court made clear, however, that the First Amendment does not require a college or university community to stand idly by *463 while persons or groups engage in conduct that substantially disrupts the functioning and the discipline of the school environment. "Associational activities need not be tolerated where they infringe reasonable campus rules, interrupt classes, or substantially interfere with the opportunity of other students to obtain an education." Id. at 189, 92 S.Ct. at 2350. Mere speculation that certain kinds of speech might lead to disruption that the institution has a right to prevent, however, is not sufficient to support a regulation that limits the exercise of free-speech rights.
Numerous decisions of the federal appeals courts have applied these principles to the situation of denial of campus-recognition privileges and have held that such denial may not be predicated upon the content of the views held or to be expressed by the students in the organization. E.g., Chess v. Widmar, 635 F.2d 1310 (8th Cir.1980), aff'd sub nom., Widmar v. Vincent, ___ U.S. ___, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981); Hudson v. Harris, 478 F.2d 244 (10th Cir.1973); University of Southern Mississippi, Mississippi Civil Liberties Union v. University of Southern Mississippi, 452 So.2d 564 (5th Cir.1971).
Those who fought in the American Revolution and adopted the Constitution and the Bill of Rights included persons of widely varying religious, political, and moral views. They were moved by the desire to establish limited government and to enshrine certain fundamental personal rights as immune from governmental infringement. In order to secure to all the liberty they had gained, the framers of the First Amendment wrote it in broad, liberal terms. The history of the interpretation of the First Amendment shows a steady movement toward protecting the free-speech rights of persons of all political and moral views. Ours is a nation rich in diversity, and our strength has been in our practice of allowing free play to the marketplace of ideas. We consist of many divergent associational groups, and "[a]s to each group, there are sectors of the community to whom its values are anathema." Gay Students Organization v. Bonner, 509 F.2d 652, 658 (1st Cir.1974). Nevertheless, "[t]o permit the continued building of our politics and culture, and to assure self-fulfillment for each individual, our people are guaranteed the right to express any thought, free from government censorship." Police Department v. Mosely, 408 U.S. 95, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972).
We therefore hold that the proviso violates the freedom of speech under the First Amendment and article I, section 4 and is unconstitutional.
The trial court erred in holding that the official bodies and Ralph Turlington in his official capacity had standing to maintain this action. Furthermore, it erred in holding that the proviso does not abridge the freedom of speech and in holding that it does not violate article III, section 12 of the Florida Constitution. The judgment is reversed. The proviso quoted at the beginning of this opinion is unconstitutional and void. The Comptroller is directed to disregard it. The Secretary of State is directed to strike it from chapter 81-206.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S.Const., Amend. I.
[2] "Every person may speak, write and publish his sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions and civil actions for defamation the truth may be given in evidence. If the matter charged as defamatory is true and was published with good motives, the party shall be acquitted or exonerated." Art. I, § 4, Fla. Const.
[3] But see Art. IX, § 1, Fla. Const.