830 So.2d 181 (2002)
CAFE EROTICA/We Dare to Bare, etc., Appellant,
v.
FLORIDA DEPARTMENT OF TRANSPORTATION, Appellee.
No. 1D01-4331.
District Court of Appeal of Florida, First District.
October 23, 2002.
Rehearing Denied November 15, 2002.
*182 Gary S. Edinger, Esq., Gainesville, for Appellant.
Pamela S. Leslie, General Counsel; Richard A. Weis, Assistant General Counsel, Tallahassee, for Appellee.
LEWIS, J.
Café Erotica/We Dare to Bare/Adult Toys/Great Food/Exit 94, Inc., appellant, challenges the Department of Transportation's Final Order which concluded that appellant's billboard was not located on the premises of a business and, therefore, required a sign permit pursuant to section 479.07, Florida Statutes (2001). Appellant also argues for the first time on appeal that sections 479.07 and 479.08, Florida Statutes (2001), as well as Florida Administrative Code Rules 14-10.004 and 14-10.006, impose a facially unconstitutional prior restraint on speech in violation of the First Amendment of the United States Constitution. We affirm the agency's Final Order without further discussion. For the reasons discussed below, we hold that sections 479.07 and 479.08 and rules 14-10.004 and 14-10.006 do not impose an impermissible prior restraint on speech.
The Department of Transportation issued a notice of violation against appellant for failure to obtain a permit to maintain an outdoor advertising sign located near Interstate 95, exit 93 in St. Johns County. Appellant requested a formal hearing, arguing that its sign was exempted from the *183 permitting statutes as an on-premises business sign. After the formal hearing, the Administrative Law Judge issued a Recommended Order, finding that appellant failed to demonstrate an entitlement to the on-premises exemption. In its Final Order, the agency adopted the Administrative Law Judge's Recommended Order and directed appellant to remove the outdoor advertising sign. This appeal followed.
Appellant argues that sections 479.07 and 479.08 and rules 14-10.004 and 14-10.006 impose a facially unconstitutional prior restraint on speech. Such a constitutional challenge may be raised for the first time on appeal. See Key Haven Associated Enter., Inc. v. Bd. of Trs., 427 So.2d 153, 157 (Fla.1982); Gulf Pines Mem'l Park, Inc. v. Oaklawn Mem'l Park, Inc., 361 So.2d 695, 699 (Fla.1978) (holding that a party is not required to argue the facial constitutionality of a statute before the administrative agency because the agency lacks the power to declare a statute unconstitutional); Rice v. Dep't of Health and Rehabilitative Servs., 386 So.2d 844, 848 (Fla. 1st DCA 1980).
The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The First Amendment guarantee of free speech applies to the states under the Fourteenth Amendment. See Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 301, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000); Dep't of Educ. v. Lewis, 416 So.2d 455, 461 (Fla.1982). Freedom of speech is also guaranteed under Article I, Section 4 of the Florida Constitution: "Every person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press." The scope of the Florida Constitution's protection of freedom of speech is the same as required under the First Amendment. See Lewis, 416 So.2d at 461. Thus, this Court applies the principles of freedom of speech as announced in the decisions of the Supreme Court of the United States. See id.
The starting point in any analysis of the regulation of speech is whether the regulation is content-based or content-neutral. See City of Ladue v. Gilleo, 512 U.S. 43, 58, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (O'Connor, J., concurring). A regulation of speech which distinguishes favored speech from disfavored speech on the basis of ideas or viewpoints is generally content-based. See Turner Broad. Sys., Inc. v. F.C.C., 512 U.S. 622, 643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). In contrast, a regulation which imposes a burden on speech without reference to the ideas or viewpoints expressed in the speech is, in a majority of instances, content-neutral. See id.
Except for exemptions under sections 479.105(1)(e)[1] and 479.16, Florida Statutes (2001), section 479.07(1), Florida Statutes (2001), requires a permit before erecting any sign on the State Highway System, of which Interstate 95 is a part. To obtain a permit, an applicant must submit, for each permit requested: *184 the appropriate permit fee; a signed statement by the owner or other person in lawful control of the site on which the sign is located or will be erected, authorizing the placement of the sign on that site; and, where local governmental regulation of signs exists, a statement from the appropriate local governmental official indicating that the sign complies with all local governmental requirements and that the agency or unit of local government will issue a permit to that applicant upon approval of the state permit application by the department.
§ 479.07(3)(a), (b), Fla. Stat. (2001). Section 479.16 provides the following exceptions to the permitting scheme:
(1) Signs erected on the premises of an establishment, which signs consist primarily of the name of the establishment or which identify the principal or accessory merchandise, services, activities, or entertainment sold, produced, manufactured, or furnished on the premises of the establishment and which comply with the lighting restrictions under department rule adopted pursuant to s. 479.11(5), or signs owned by a municipality or a county located on the premises of such municipality or such county which display information regarding government services, activities, events, or entertainment. For purposes of this section, the following types of messages shall not be considered information regarding government services, activities, events, or entertainment:
(a) Messages which specifically reference any commercial enterprise.
(b) Messages which reference a commercial sponsor of any event.
(c) Personal messages.
(d) Political campaign messages.
If a sign located on the premises of an establishment consists principally of brand name or trade name advertising and the merchandise or service is only incidental to the principal activity, or if the owner of the establishment receives rental income from the sign, then the sign is not exempt under this subsection.
(2) Signs erected, used, or maintained on a farm by the owner or lessee of such farm and relating solely to farm produce, merchandise, service, or entertainment sold, produced, manufactured, or furnished on such farm.
(3) Signs posted or displayed on real property by the owner or by the authority of the owner, stating that the real property is for sale or rent. However, if the sign contains any message not pertaining to the sale or rental of that real property, then it is not exempt under this section.
(4) Official notices or advertisements posted or displayed on private property by or under the direction of any public or court officer in the performance of her or his official or directed duties, or by trustees under deeds of trust or deeds of assignment or other similar instruments.
(5) Danger or precautionary signs relating to the premises on which they are located; forest fire warning signs erected under the authority of the Division of Forestry of the Department of Agriculture and Consumer Services; and signs, notices, or symbols erected by the United States Government under the direction of the United States Forestry Service.
(6) Notices of any railroad, bridge, ferry, or other transportation or transmission company necessary for the direction or safety of the public.
(7) Signs, notices, or symbols for the information of aviators as to location, directions, and landings and conditions *185 affecting safety in aviation erected or authorized by the department.
(8) Signs or notices erected or maintained upon property stating only the name of the owner, lessee, or occupant of the premises and not exceeding eight square feet in area.
(9) Historical markers erected by duly constituted and authorized public authorities.
(10) Official traffic control signs and markers erected, caused to be erected, or approved by the department.
(11) Signs erected upon property warning the public against hunting and fishing or trespassing thereon.
(12) Signs not in excess of eight square feet that are owned by and relate to the facilities and activities of churches, civic organizations, fraternal organizations, charitable organizations, or units or agencies of government.
(13) Except that signs placed on benches, transit shelters, and waste receptacles as provided for in s. 337.408 are exempt from all provisions of this chapter.
(14) Signs relating exclusively to political campaigns.
(15) Signs not in excess of sixteen square feet placed at a road junction with the State Highway System denoting only the distance or direction of a residence or farm operation, or, in a rural area where a hardship is created because a small business is not visible from the road junction with the State Highway System, one sign not in excess of sixteen square feet, denoting only the name of the business and the distance and direction to the business. The small-business-sign provision of this subsection does not apply to charter counties and may not be implemented if the Federal Government notifies the department that implementation will adversely affect the allocation of federal funds to the department.
In addition to section 479.07, Florida Administrative Code Rule 14-10.004 outlines the procedures for a permit application and issuance. These procedures explain in detail the information required in an application. Under Florida Administrative Code Rule 14-10.006, the Department of Transportation considers additional objective permitting criteria. In addition to the statutory requirements, an applicant must comply with the size, number of faces, location, spacing, structure height, and lighting requirements set forth in the rule. Fla. Admin. Code R. 14-10.006.
Section 479.08 authorizes the Department of Transportation to:
deny or revoke any permit requested or granted under this chapter in any case in which it determines that the application for the permit contains knowingly false or misleading information or that the permittee has violated any of the provisions of this chapter, unless such permittee, within 30 days after the receipt of notice by the department, corrects such false or misleading information and complies with the provisions of this chapter. Any person aggrieved by any action of the department in denying or revoking a permit under this chapter may, within 30 days after receipt of the notice, apply to the department for an administrative hearing pursuant to chapter 120. If a timely request for hearing has been filed and the department issues a final order revoking a permit, such revocation shall be effective 30 days after the date of rendition. Except for department action pursuant to s. 479.107(1), the filing of a timely and proper notice of appeal shall operate to stay the revocation until the department's action is upheld. *186 Here, appellant conceded at oral argument that these regulations are content-neutral.
A "prior restraint" exists when the government conditions speech in a permitting scheme upon the prior approval of public officials. See Nightclubs, Inc. v. City of Paducah, 202 F.3d 884, 889 (6th Cir.2000) (citing Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975)). Under this definition, sections 479.07 and 479.08 and rules 14-10.004 and 14-10.006 do constitute a prior restraint on speech in the outdoor advertising sign domain. These regulations require an individual to obtain a public permit prior to erecting an outdoor sign containing speech. However, merely because a public permit is required before erecting an outdoor sign containing speech, it does not follow that such regulations are improper prior restraints.
An impermissible prior restraint exists when the government bases its censorship on content without certain procedural safeguards to guard against the dangers of such censorship. See, e.g., FW/ PBS, Inc. v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); see also Desert Outdoor Adver., Inc. v. City of Moreno Valley, 103 F.3d 814 (9th Cir.1996) (holding that billboard ordinance violated the First Amendment because it was content-based and constituted a prior restraint); Fla. Cannabis Action Network, Inc. v. City of Jacksonville, 130 F.Supp.2d 1358 (M.D.Fla.2001) (stating that ordinance requiring permit for festival was content-based and, therefore, subject to prior restraint analysis). Here, although sections 479.07 and 479.08 and rules 14-10.004 and 14-1.006 are prior restraints on the erection of outdoor advertising signs, the regulations are not impermissible prior restraints on speech. As appellant has conceded that the permitting regulations are content-neutral, the statutes and rules do not necessitate the application of the Freedman procedural requirements. Cf. Thomas v. Chicago Park Dist., 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) (stating that the Freedman procedural requirements are not applicable to content-neutral permitting schemes in the public fora).
While the permitting regulations are not impermissible prior restraints, the question remains whether the regulations improperly restrict all offsite commercial signs, such as appellant's. The extension of First Amendment protection to purely commercial speech is a fairly recent development. See Va. Pharmacy Bd. v. Va. Citizens Consumer Council, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). In Metromedia, Inc. v. City of San Diego, the leading case on billboard regulation, a plurality of the Supreme Court reviewed a similar billboard ordinance by separately addressing the effect of the ordinance on commercial and noncommercial speech. 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality holding that ordinance which banned all off-premises outdoor advertising signs impinged unconstitutionally on noncommercial speech). Likewise here, the permitting regulations must not improperly affect commercial speech.[2] In Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 562-63, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the Supreme Court held that the United States Constitution "affords a lesser *187 protection to commercial speech than to other constitutionally guaranteed expression." The Supreme Court then adopted a multi-part test for determining the validity of government restrictions on non-misleading commercial speech. In order for a restriction on commercial speech to be valid, the restriction must first implement a substantial governmental interest. Id. at 564, 100 S.Ct. 2343. Second, the restriction must directly advance that interest. Id. Finally, the regulation must not reach further than necessary to accomplish the stated objective. Id.
Here, the statutes and rules relate to the federal Highway Beautification Act of 1965, codified as amended at 23 U.S.C. section 131, which provides that outdoor advertising signs should be controlled to promote safety and to provide natural beauty. See § 479.02(1), Fla. Stat. (2001). The Florida Legislature has stated that the control of signs adjacent to state highways are necessary:
to protect the public investment in the state highways; to attract visitors to this state by conserving the natural beauty of the state; to preserve and promote the recreational value of public travel; to assure that information in the specific interest of the traveling public is presented safely and aesthetically; to enhance the economic well-being of the state by promoting tourist-oriented businesses, such as public accommodations, vehicle services, attractions, campgrounds, parks, and recreational areas; and to promote points of scenic, historic, cultural, and educational interest.
§ 479.015, Fla. Stat. (2001).
Traffic safety and the appearance of the highways have traditionally been recognized as substantial governmental goals. See Metromedia, 453 U.S. at 508, 101 S.Ct. 2882; see also Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). Thus, the permitting regulations meet the first criterion. The regulations directly advance these goals by limiting the spacing between billboards and the structural characteristics of such billboards along the State Highway System. See § 479.07, Fla. Stat. The regulations also advance these goals by prohibiting signs which may intentionally distract or confuse travelers. See, e.g., § 479.11(5), Fla. Stat. (2001) (prohibiting signs displaying rotating or flashing lights in such a manner as to cause glare or to impair motorists' vision); § 479.11(6), Fla. Stat. (2001) (prohibiting signs using the words "stop" or "danger" or which imitate official signs). As the Supreme Court noted in Metromedia, "a legislative judgment that billboards are traffic hazards is not manifestly unreasonable and should not be set aside." 453 U.S. at 508, 101 S.Ct. 2882. The Supreme Court also stated in a case involving a New York City ordinance banning advertising on vehicles that the Court:
would be trespassing on one of the most intensely local and specialized of all municipal problems if we held that this regulation had no relation to the traffic problem of New York City. It is the judgment of the local authorities that it does have such a relation. And nothing has been advanced which shows that to be palpably false.
Railway Express Agency, 336 U.S. at 109, 69 S.Ct. 463. Thus, the regulations in this case meet the second Central Hudson criterion.
Finally, the permitting regulations do not reach further than necessary to accomplish their given objective. The regulations do not ban all outdoor advertising signs. They merely limit the size and spacing of the signs to accomplish the government's *188 aesthetic interests. Indeed, the permitting scheme allows exceptions to the permitting process for onsite advertising and other specifically exempted signs. See Metromedia, 453 U.S. at 508, 101 S.Ct. 2882 (rejecting claim that billboard ordinance was broader than necessary where it did not prohibit all billboards but allowed for onsite advertising and certain other exceptions). Because the regulations are not broader than necessary, they meet the final Central Hudson criterion. Therefore, the permitting regulations meet the constitutional requirements of Central Hudson to the extent that they regulate commercial speech.
Thus, we hold that sections 479.07 and 479.08 and rules 14-10.004 and 14-10.006 do not impose an impermissible prior restraint on speech nor do these regulations improperly restrict commercial speech. Accordingly, sections 479.07 and 479.08 and rules 14-10.004 and 14-10.006 are facially constitutional.
AFFIRMED.
MINER and BENTON, JJ., CONCUR.
NOTES
[1] Section 479.105(1)(e) grandfathers signs which were unpermitted, structurally unchanged and continuously maintained at the same location for seven years or more. This section does not apply to this case as the record shows that the sign here was constructed in 2000.
[2] Because appellant's sign does not convey any noncommercial advertising and because appellant does not argue that the regulations improperly affect noncommercial speech, this Court need not address the constitutionality of sections 479.07 and 479.08 as they pertain to noncommercial speech.