363 So.2d 631 (1978)
CALDER RACE COURSE, INC., Appellant,
v.
Robert K. OVERSTREET, Etc., et al., Appellees.
No. 77-1849.
District Court of Appeal of Florida, Third District.
October 31, 1978.
*632 Taylor, Brion, Buker & Greene and R. Bruce Wallace, Robert J. Paterno, Miami, for appellant.
Stuart Simon, County Atty. and Robert L. Krawcheck, Asst. County Atty., for appellees.
Before PEARSON, HUBBART and KEHOE, JJ.
HUBBART, Judge.
This is an action challenging the assessed valuation of property for ad valorem tax purposes instituted by a taxpayer in the Circuit Court for the Eleventh Judicial Circuit of Florida. The trial court declined to upset the tax assessment herein as sustained by the county tax adjustment board. The taxpayer appeals.
The central issue presented for review is whether the cost less depreciation plus land value approach to assessing race track property for ad valorem tax purposes is a constitutionally acceptable method of assessing such property within the meaning of Article VII, § 4 of the Florida Constitution. We hold that it is and affirm.

A
The facts of this case are as follows. The Dade County Tax Assessor Alfred Blake assessed the horse race track premises of the plaintiff taxpayer Calder Race Course, Inc. for 1974 ad valorem tax purposes at $20,193,550. The land of the Calder Race Course was assessed at $4,452,268; the improvements thereon were assessed at $15,741,282.
On July 29, 1974, the plaintiff Calder Race Course filed a petition for equalization of assessment before the Dade County Tax Assessment Board. The taxpayer Calder did not contest the land assessment herein, but did resist the improvements assessment. Calder's petition was referred to a special master who held a hearing, took testimony and concluded that the improvements assessment exceeded just valuation despite a finding that the evidence presented did not exclude every reasonable hypothesis of a legal assessment. He recommended that the improvements assessment be reduced from $15,741,282 to $5,981,687. The Dade County Tax Adjustment Board thereafter conducted a full hearing at the request of the tax assessor, reviewed the special master's report and the record, and upheld the tax assessor's original assessment of Calder's land and improvements.
Calder thereafter brought an original action to review the Tax Adjustment Board's assessment in the Circuit Court for the Eleventh Judicial Circuit of Florida. The amended complaint alleges that the just valuation of the race track improvements is $5,981,687 which taken with the uncontested land assessment makes the total property assessment $10,443,955. Calder has paid the tax based on this valuation. The case was tried non-jury in which evidence was received and argument heard from both parties. The trial court entered a comprehensive *633 order making detailed findings of fact and conclusions of law and sustained the action of the Tax Adjustment Board. This appeal follows.
The trial court found from the evidence as follows. As of the taxing date, January 1, 1974, Calder Race Course was a practically new horse race track facility, which in part was still under construction in Dade County, Florida. The original physical plant was completed in 1971 and consisted of a seven story glass enclosed, completely air conditioned and heated patron facility containing grandstand, club house, private club, press boxes, and various utility and media equipment areas. The grandstand and club house included seating, various snack and liquor bars, and closed circuit television theatres, all serviced by high speed electronically controlled elevators and escalators. The private club included a cocktail bar and lounge, dining room and kitchen. A second phase of construction expanding the patron facility was completed in November 1973, approximately two months prior to the taxing date. Phase three of the expansion of the patron facility was in progress on the taxing date and was completed during 1974.
In addition to the patron facility, the race course includes completely air conditioned and heated jockey quarters, an administration building, a racing department building with press room and library, a stable area including 1,758 concrete and aluminum stalls in 86 completely fire proof buildings, 246 grooms' living quarters in 37 buildings and hundreds of fire proof feed and equipment rooms. Additionally, there is a stable, kitchen, laundry room, clothing store, sundry store, chapel, detention barn, maintenance building, trailer residence, blacksmith's shop building, security building and guard house.
The main running surface of the race course consists of a synthetic surface which is not affected by rain and is free of holes and stones. Additionally, there is a turf or grass course and training or exercise track in the stable area. The mutuel facilities include the most sophisticated computerized totalizator in the thoroughbred business. There are some 445 selling and cashier windows. The race track has one of the largest closed circuit television systems of any race track in the nation. The total land area in question is approximately 204 acres. At the close of its fiscal year ending November 30, 1973, the plaintiff had invested approximately $26 million in improvements alone of which approximately $3 million represented construction in progress.
It is undisputed that the tax assessor used a cost approach in assessing Calder's race track property. That is, he estimated the replacement costs of the race track improvements and deducted depreciation therefrom. He then added this total to the value of the race track land. See American Institute of Real Estate Appraisers, The Appraisal of Real Estate, 64-67 (6th ed. 1973). As the trial court noted in its final judgment, Calder "did not dispute the fact that the assessed value is well-supported by the cost approach to valuation, but instead asserted that the only proper approach is the income approach ...". As urged by Calder, the income approach is based on the net income which a fully informed person is warranted in assuming that the property will produce during the remainder of its useful life multiplied by an estimated capitalization rate which represents the return on investment. See American Institute of Real Estate Appraisers, The Appraisal of Real Estate, 70-71 (6th ed. 1973). Calder also urged that the value of the land should then be added to the value of the improvements as computed by the income approach. Finally, Calder did not contest the tax assessor's estimate of the value of the land herein.

B
The law is well-settled that under Article VII, § 4 of the Florida Constitution a taxpayer's property must be assessed at just valuation or fair market value for ad valorem tax purposes. This means the property must be assessed at an amount a purchaser willing but not obligated to buy would pay to a seller willing but not obligated to sell. ITT Community Development Corp. v. Seay, 347 So.2d 1024, Fla.; Burns v. Butscher, 187 So.2d 594 (Fla. 1966); *634 Walter v. Schuler, 176 So.2d 81 (Fla. 1965); Root v. Wood, 155 Fla. 613, 21 So.2d 133 (1945).
The law is equally well-settled that the fixing of a valuation on property by a tax assessor for the purpose of ad valorem taxation is an administrative act involving the exercise of administrative discretion, and the courts will not in general control that discretion unless it is illegally or fraudulently exercised or exerted in such manner or under such circumstances as would amount in law to a fraud. Powell v. Kelly, 223 So.2d 305 (Fla. 1969). The tax assessment is therefore presumed to be correct and in order to sustain his burden of proof in challenging such assessment, the taxpayer must present proof which excludes every reasonable hypothesis of a legal assessment. Homer v. Dadeland Shopping Center, Inc., 229 So.2d 834 (Fla. 1969).
In assessing race track property for ad valorem tax purposes, it is a permissible, and, indeed, the preferred approach to follow the cost minus depreciation plus land value method as utilized by the tax assessor herein. Delaware Racing Ass'n v. McMahon, 320 A.2d 728 (Del. Super. Ct. 1974) rev'd on other grounds, 340 A.2d 837 (Del. 1975). It is also permissible to follow the income approach as urged by Calder providing a deduction is made for the value of the race track license to conduct pari-mutuel wagering. Hecht v. Dade County, 234 So.2d 709 (Fla. 3d DCA 1970). Where such a deduction has not been made, however, the income approach has been disapproved. Homer v. Hialeah Race Course, Inc., 249 So.2d 491 (Fla.3d DCA 1970); Metropolitan Dade County v. Tropical Park, Inc., 231 So.2d 243 (Fla. 3d DCA 1970). Either the preferred cost approach or the income approach as modified may be utilized in assessing race track property so long as the final result under all the facts of the case satisfies the constitutional willing seller-willing buyer test within the broad limits of permissible administrative discretion.

C
Our review of the record reveals that the taxpayer Calder has failed to sustain its burden of proof to upset the tax assessment herein. The cost approach utilized by the tax assessor to value Calder's race track was perfectly proper. And the $20,193,550 million assessment figure is well within the discretionary limits accorded to tax assessors in this area of law. The Calder race track facilities are practically new and have approximately $26 million invested therein. It is undisputed that the land value of the race track is over $4 million. The assessed value therefore appears to us to be a reasonable tax assessment for this new and admittedly successful race track. Indeed, the assessment may even be a little on the low side as Calder's owners would be taking a significant investment loss were they to sell the property at the assessed valuation. At any rate, we believe the proofs before the trial court do not exclude every reasonable hypothesis of a legal assessment and, therefore, the courts have no authority to interfere with the tax assessor's administrative discretion in this case. The trial court was eminently correct in sustaining the tax assessment herein.
We have carefully examined the balance of Calder's contentions on this appeal and find them to be without merit. The judgment appealed from is accordingly affirmed.
Affirmed.