738 So.2d 338 (1998)
Lawrence FUCHS, etc., et al., Appellants,
v.
Joel W. ROBBINS, etc., Appellee.
Nos. 98-275, 98-274.
District Court of Appeal of Florida, Third District.
November 18, 1998.
Opinion Granting Rehearing July 16, 1999.
*339 Robert A. Butterworth, Attorney General, and Joseph C. Mellichamp, III, Assistant Attorney General; Bloom & Minsker, Miami; Arnaldo Velez, Miami, for appellants.
Robert A. Ginsburg, Dade County Attorney, and Jay W. Williams, Assistant County Attorney, for appellee.
Before JORGENSON, LEVY and GODERICH, JJ.
Opinion Granting Rehearing En Banc July 16, 1999.
LEVY, Judge.
This appeal arises from a lower court Order upholding the Property Appraiser's original assessment of the Miami Beach Ocean Resort and declaring section 192.042, Florida Statutes unconstitutional. For the reasons that follow, we reverse.
In 1992, Joel W. Robbins, a Dade County property appraiser ("the Appraiser"), assessed property, now The Miami Beach Ocean Resort ("the Taxpayer"), at $6,067,227.00. Specifically, he assessed the land at a value of $2,277,000.00 and the building at $3,790,227.00. The Taxpayer appealed the assessment to the Dade County Value Adjustment Board ("the Board"). The Board reduced the value of the building to $50,000. In response, the Appraiser brought an action in the circuit court to defend his original tax assessment of the building ("subject property").[1] A general master was appointed to hear the matter pursuant to Florida Rule of Civil Procedure 1.490.
At trial, the Appraiser established that he conformed to the eight factors enumerated in section 193.011, Florida Statutes (1991). In response, the Taxpayer argued that pursuant to section 192.042 the subject property was not substantially completed as of January 1, 1992, and as a result thereof should have no value placed upon it for the 1992 tax year.[2] The Appraiser responded that section 192. 942 was unconstitutional and therefore his original assessment should stand.
The General Master found that the Taxpayer established the subject property was not substantially completed as of January 1, 1992, as defined in section 192.042, but found that section 192.042 was unconstitutional. This finding was based upon the General Master's determination that the provision improperly creates a class of property not enumerated in Article VII, Section 4 of the Florida Constitution, and further recommended that the Appraiser's original assessment be upheld. The trial court adopted the recommendation and incorporated by reference the General Master's Report in its Order.
The Taxpayer challenges the Order and argues that the Property Appraiser, as a constitutional officer, does not have standing to challenge the validity of section 192.042. The general rule, as the *340 Taxpayer asserts, is that government officials and constitutional officers do not have standing to challenge the constitutionality of a statute. Department of Educ. v. Lewis, 416 So.2d 455, 458 (Fla.1982). However, where operation of a statute is brought into issue by another party in the litigation, the officer may, in defense, question the validity of the statute. Id.
Here, it was the Taxpayer who raised the issue of whether the property was substantially completed pursuant to section 192.042. The Property Appraiser challenged the validity of section 192.042 after the taxpayer put forth evidence showing that the property was not "substantially complete" on January 1, 1992. Accordingly, we find that the Property Appraiser had standing to challenge the validity of section 192.042, Florida Statutes pursuant to Department of Educ. v. Lewis, 416 So.2d 455 (Fla.1982). We further find that this holding is consistent with section 194.036, Florida Statutes.
We disagree with the lower court and expressly hold that section 192.042, Florida Statutes, is constitutional. At the outset, we note that the Supreme Court of Florida upheld the constitutionality of a similar statute in Culbertson v. Seacoast Towers East, Inc., 212 So.2d 646 (Fla. 1968); see also Hausman v. Bayrock Investment Co., 530 So.2d 938 (Fla. 5th DCA 1988)(finding that the validity of section 192.042(1) is settled by Culbertson v. Seacoast Towers East, Inc., 212 So.2d 646 (Fla.1968) and Markham v. Yankee Clipper Hotel, Inc., 427 So.2d 383 (Fla. 4th DCA 1983)); Markham v. Yankee Clipper Hotel, Inc., 427 So.2d 383 (Fla. 4th DCA 1983), rev. denied 434 So.2d 888 (Fla.1983)(holding that section 192.042(1) does not violate the "just valuation" clause of Article VII, section 4).
The Property Appraiser relies on Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla.1973) to support his argument that the 1968 Amendment to our State Constitution, enumerating specific instances where property may be valued according to different valuation standards, affects the holding in Culbertson. This argument has no merit. Contrary to the Property Appraiser's argument, neither the 1968 amendment nor Interlachen alter the Culbertson holding. Compare Fla. Const. art. IX, § 1 (1885) with Fla. Const. art. VII, § 4 (1968); see also Yankee Clipper, 427 So.2d at 384 n. 3 (finding that "[t]he constitutional change in 1968 is insignificant.").
The 1968 Amendment, like the 1885 constitution, requires that regulations secure a "just valuation" of all property. Unlike section 192.042(1), the statute at issue in Interlachen did not permit a "just valuation" of all property. In Interlachen, the Supreme Court of Florida found that section 195.062(1),[3] Florida Statutes, violated Article VII, section 4 of the 1968 Florida Constitution. The Court found that this section created a classification based on ownership effectively giving a subdivision developer a "tax break by treating his unsold lots as unplatted for tax valuation purposes." The Court recognized that the statute discriminated between the subdivider and purchasers of the lots because unlike the subdivider, the purchasers of the lots would be paying taxes on similar lots. The Court also noted its concern that assessment standards and criteria might be manipulated to favor certain taxpayers over others.
As the Court pointed out in Interlachen, section 195.062(1) taxed similar property differently, depending on who owned it; to-wit, if the lot had been sold the land was taxed, if it had not been sold the land was not taxed. Here, all property not substantially complete by January 1st is not taxed for that particular year.
*341 Accordingly, we find that section 192.042 does not create an additional exemption in violation of Article VII, section 4. Rather, it merely relates to the timing of the valuation and assessment of incomplete improvements to real property. Culbertson, 212 So.2d at 647. We note that it is the Legislature, acting through statutes that it passes, that has the recognized authority to determine the date upon which valuation and assessment of property shall take place, to-wit: January 1st of each calendar year. See Fla. Stat. § 192.042 (1997).
The Order appealed from is reversed. Since the general master found that the building was not "substantially completed" on January 1, 1992, the building should not have been assessed for the 1992 year.
Reversed.
Before SCHWARTZ, C.J., and NESBITT, JORGENSON, COPE, LEVY, GERSTEN,[*] GODERICH, GREEN, FLETCHER, SHEVIN, and SORONDO, JJ.

ON REHEARING EN BANC
FLETCHER, Judge.
We grant rehearing en banc and affirm the decision of the trial court which held section 192.042(1), Florida Statutes (1991) to be unconstitutional.[1] The statute requires that a zero valuation, for ad valorem property tax purposes, be placed on buildings under construction and not substantially completed on the taxing date (January first of each year). We conclude that the statute is unconstitutional because it violates the mandate of the Florida Constitution that all real property[2] (with certain inapplicable exceptions) be assessed and taxed at just valuation[3] (fair market value). Here, the real property improvement (an incomplete hotel) on the owner's land had an uncontested fair market value of $3,790,227, on January 1, 1992 (the tax year in question), but the subject statute requires this incomplete improvement to be assessed and taxed at a zero value. As this result is in direct conflict with the constitution's mandate to assess all real property at just valuation, it follows that the statute contravenes the constitution; which, of course, means that the legislature was not, and is not, empowered to enact the statute. If we were to conclude otherwise, the owners would not be required to pay their fair share of the 1992 cost of local governmental services, such as police and fire protection, planning, building, zoning, public works, and others funded by ad valorem taxes.[4],[5]
We start our analysis with article VII, section 4, Florida Constitution (1968), which reads in pertinent part:
"By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation...."[6]
*342 The "just valuation" of article VII, section 4, which the legislature is mandated to guarantee,[7] is synonymous with "fair market value," Valencia Center, Inc. v. Bystrom, 543 So.2d 214 (Fla.1989); Walter v. Schuler, 176 So.2d 81 (Fla.1965). The supreme court has defined fair market value as:
"The amount a purchaser willing but not obliged to buy, would pay to one willing but not obliged to sell."
Id.; see also Valencia Center; ITT Community Dev.
This court in McNayr v. Claughton, 198 So.2d 366 (Fla. 3d DCA 1967) added that, in arriving at the willing buyer/willing seller amount (fair market value):
"[T]here are three well recognized guides to appraisal: (1) the cost approach; (2) the comparable sales and (3) the income or economic approach."
Id. at 368. The constitutional mandate of just valuation thus comes down to the classic, well-understood appraisal practice which is to be utilized in arriving at fair market value.
The trial court referred the case to General Master John R. Farrell, whose Findings of Fact, Conclusions, and Recommendations were adopted by the trial judge as her own and were incorporated into the Final Judgment. The Master's Report informs us that the property appraiser's expert, Mr. Frank Jacobs, using the comparable sales approach to value, arrived at the $3,790,227 tax assessment valuation on the improvements.[8] The Report further tells us that Mr. Jacob's testimony was given without objection and there was no contrary testimony. The parties' briefs reveal that the owners have not challenged the value placed on the incomplete improvements by the property appraiser, as a result of which, the established just valuation (fair market value) of the incomplete hotel structure on January 1, 1992, was $3,790,227.
Mr. Jacob's ability to use the comparable sales approach meant that similar property was commonly bought and sold, enabling him to extrapolate therefrom the value of the incomplete improvements. In the absence of comparable sales, however, the courts have upheld the use of the cost approach,[9] including in those situations involving incomplete improvements. See Aeronautical Communications Equip. v. Metropolitan Dade County, 219 So.2d 101 (Fla. 3d DCA 1969)(where there is no established market, incompleted work in process is properly valued by the cost approach);[10]see also United States v. Savannah Shipyards, 139 F.2d 953 (5th Cir.1944)(evidence as to cost approach admissible to place value on partially completed shipyard which was subjected to *343 eminent domain suit); State v. Willett Holding Co., 62 N.J. 59, 298 A.2d 69 (1972)(where a partially completed nursing home was subjected to an eminent domain action, use of cost approach "entirely appropriate").
Thus, on January 1, 1992, the incomplete hotel structure had an uncontested just valuation of $3,790,227. The owners, however, invoked section 192.042, Florida Statutes (1991) which provides in relevant part:
"All property shall be assessed according to its just value as follows:
(1) Real property, on January 1 of each year. Improvements or portions not substantially completed on January 1 shall have no value placed thereon. `Substantially completed' shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed."
This statute requires the subject improvements to be valued for ad valorem tax purposes at zero for the tax year 1992 as they were not substantially complete on January 1, 1992, thus eliminating from taxation the $3,790,227 of existing improvements. The statute's conflict with article VII, section 4, Florida Constitution, which mandates that all property is to be taxed at fair market value, could not be clearer.
The Florida Supreme Court has held unconstitutional other statutes which called for real property to be assessed and taxed at less than fair market value. In Interlachen Lakes Estates v. Snyder, 304 So.2d 433 (Fla.1973) the court dealt with former section 195.062(1), Florida Statutes (1973), which statute created a classification of property (certain platted lots) which was to receive required special tax valuation treatment. The court found that the special treatment for the classification would have resulted in the lots there involved being assessed at less than their fair market value. The court struck down the statute as unconstitutional, concluding that article VII, section 4 prohibits the legislature from enacting legislation creating classifications (other than those specifically set out in article VII, section 4) which results in property taxation at less than fair market value.
In ITT Community Dev. Corp. v. Seay, 347 So.2d 1024 (Fla.1977), the Florida Supreme Court dealt with section 194.042, Florida Statutes,[11] which made available to taxpayers an alternate method (as opposed to administrative appeals) of challenging the tax assessment valuation placed on their property. This method, an "auction" of the property at a date ten months after January 1st, would of necessity (because property values fluctuate) have resulted in a sale price, and thus an assessment, which differed (either higher or lower) from fair market value on January 1st of the tax year. The court struck down the statute as violating the constitutional injunction that all property must be assessed at its just valuation on the taxing date, stating:
"The trial court found Section 194.042, Florida Statutes (1975), unconstitutional on its face as providing a method of determining valuation for ad valorem taxation purposes which violates the `just valuation' criterion of Article VII, Section 4 of the Florida Constitution. That constitutional provision states:
`By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation....'
While we admire the conceptual simplicity with which Pope's law attempts to determine value, we must affirm the *344 conclusion reached by the court below that the statute is incapable of arriving at `just valuation' as mandated by our organic document." [emphasis supplied]
347 So.2d at 1026.
In 1989, the Florida Supreme Court held unconstitutional section 193.023(6), Florida Statutes (1987), which called for properties subject to long-term leases which were entered into prior to 1965 to be assessed for taxation based solely on the use permitted by the lease agreement and not on higher and better uses which may have been allowed by zoning ordinances. Such a limitation would have resulted in ad valorem tax valuations below fair market value. Valencia Center, Inc. v. Bystrom, 543 So.2d 214 (Fla.1989). The court again concluded that the legislature cannot require property tax valuations at anything other than fair market value in the absence of specific constitutional provision therefor:
"Our decision on the constitutionality of this statute is controlled by Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla.1974)[sic]. There, we determined that the legislature cannot establish different classes of property for tax purposes other than those enumerated in article VII, section 4 of the Florida Constitution...."[12]
543 So.2d at 216.
Nonetheless, the owner urges us to conclude that section 192.042(1), even though it leads inexorably to tax assessment valuations at less than just valuation, is not in violation of the state constitution. Their urgings have their genesis in the legal history of an earlier version of the subject statute, section 193.11(4), Florida Statutes (1967), which read:
"All taxable lands upon which active construction of improvements is in progress and upon which such improvements are not substantially completed on January 1 of any year shall be assessed for such year, as unimproved lands. Provided, however, the provisions hereof shall not apply in cases of alteration or improvement of existing structures."
In Culbertson v. Seacoast Towers East, Inc., 212 So.2d 646 (Fla.1968), the validity of this statute was challenged in relation to the tax assessment valuation on January 1, 1967 of an incomplete apartment building. The Dade County Circuit Court concluded that section 193.11(4), which required the tax assessment for 1967 to be zero on Seacoast's incomplete apartment building, was constitutional notwithstanding that it resulted in a tax valuation on the taxing date of less than fair market value. This ultimately resulted in the removal of $8,180,000 of Seacoast's improvements from the 1967 Dade County tax rollan action which this court, in a later related case involving the same parties, observed to be "a seeming inequitable result" because the statute "entirely removes from the tax rolls improvements to land when these improvements have tremendously enhanced the value of the land."[13]
The supreme court in Seacoast affirmed the circuit court's conclusion that the statute was constitutional, stating:
"The statute constitutes only a temporary postponement of valuation and assessment of incomplete improvements on real property provided the prescribed conditions are met on the annual assessment date. The requirement is simply that the separate classification of such property shall bear some reasonable relationship to the legislative power to prescribe regulations to secure a just evaluation of property."
212 So.2d at 647.
The owner's argument, derived from the *345 above language of Seacoast,[14] that the present section 192.042(1) is simply another regulation enacted to secure just valuation (fair market value), as mandated by the constitution, is without any basis in reality. The statute does not secure[15] the assessment of the improvements at fair market value ($3,740,227), it totally obliterate s the assessment (a zero assessment valuation completely unrelated to fair market value). Surely it can be understood that a developer who has just constructed 3.7 million dollars of improvements as part of her or his hotel is not going to willingly sell them for zero dollarsalthough certainly a buyer would be willing to close on such a bargain. Fair market value, however, requires a willing buyer and a willing seller. Walter v. Schuler, 176 So.2d at 86. The price these assumed-to-be sentient beings would agree upon, as determined by standard appraisal practice such as the comparable sales approach or the cost approach, would include both the land value and the value of the improvements.
The owner's argument derived from the Seacoast court's statement that the statute caused only a "temporary postponement" also is not borne out by reality. The 1992 tax dollars, if based on a zero "valuation" rather than the $3,790,227 valuation, would be lost to the taxing authorities forever just as the 1967 Seacoast taxes that would have been based on the $8,180,000 were lost forever. The statutes governing taxation did not, and do not, call for a back-assessment for the "zero" year even though the improvements are subsequently completed. Unlike postponed ball games, no rain check is issued for the "postponed" taxes.[16]
Examining the Seacoast decision it is observed that the court's conclusion that the legislature could validly enact the statute as a "classification" of property was not explained therein, nor was any provision of the (then in effect) 1885 constitution referenced as authority. At that time the ad valorem property tax provisions of the 1885 constitution, article IX, section 1, Florida Constitution (1885) read:
"The Legislature shall provide for a uniform and equal rate of taxation, except that it may provide for special rate or rates on intangible property, ... and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes."
It contained no authorization for the disparate treatment of property other than the listed municipal, educational, etc., properties permitted to be exempted by the legislature.
One also observes that the supreme court in Seacoast relied on L. Maxcy, Inc. v. Federal Land Bank of Columbia, 111 Fla. 116, 150 So. 248 (1933) and cited Jasper v. William C. McLean & Sons, Inc., 195 So.2d 240 (Fla. 2d DCA 1967), both of which involved statutory provisions[17] that freed immature non-bearing fruit trees from taxation. Jasper, a Second District Court of Appeal decision, did not deal with the constitutionality of the statute, but only with its application (actually non-application) to damaged mature fruit trees. At that time (1967) the district courts did not have jurisdiction over such constitutional issues. In the 1933 decision in L. Maxcy, the supreme court had concluded *346 that the freeing of immature fruit trees from taxation (by not including them in the land assessment valuation) was within the legislature's reasonable tax classification power as this was simply a postponement of taxing their value until a later year, at which time the "present loss" would be compensatedthe factually incorrect justification put forth here by the owner and later expressed in Seacoast. In 1933, the date of the decision in L. Maxcy, as previously noted as to 1968, the date of the Seacoast decision, the taxing statutes did not (and today do not) permit back taxation of the "postponed" value and the taxes thereon were lost foreveran event overlooked by L. Maxcy, Seacoast, and the owner here.
As we stated in footnote 14, the Seacoast decision is no longer viable. The legal logic behind Seacoast, and L. Maxcy[18] as well, was ousted in 1968 when a new state constitution was adopted by the people. The post-adoption legal logic behind Interlachen Lakes Estates, (1973), ITT Community Dev. Corp., (1977), and Valencia Center, (1989), all discussed previously, flowed from the new constitution, specifically article VII, section 4, a substantial reworking of the ad valorem taxation mandate. As adopted in 1968, article VII, section 4, read:[19]
"By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation, provided:
(a) Agricultural land or land used exclusively for non-commercial recreational purposes may be classified by general law and assessed solely on the basis of character or use.
(b) Pursuant to general law tangible personal property held for sale as stock in trade and livestock may be valued for taxation at a specified percentage of its value."
In relation to the impact of this new article VII, section 4, the Florida Supreme Court stated in Interlachen Lakes Estates, 304 So.2d at 434:
"This section is different from the prior `just valuation clause' contained in Article IX, Section 1 of the 1885 Florida Constitution, in that the two subsections were added by the 1968 constitutional revisers. Apparently the revisers felt that the four classes of property mentioned in these two subsections should be valued according to different standards than all other property. The rule expressio unius est exclusio alterius applies, however, so that by clear implication no separate standards for valuation may be established for any other classes of property.

Under the 1885 Constitution, we had held that the legislature could tax different classes of property on different bases, as long as the classification was reasonable. Lanier v. Overstreet, 175 So.2d 521 (Fla.1965). The people of this State, however, by enumerating in their new Constitution which classifications they want, have removed from the legislature the power to make others." (emphasis supplied)[20]
*347 It is important to know and understand that the supreme court in Interlachen specifically held that the legal logic of Lanier v. Overstreet, referenced in the above quote, was displaced by the new constitution. It is equally important to know and understand that Lanier v. Overstreet had relied specifically on L. Maxcy's logic, thus Interlachen also clearly displaced L. Maxcy. And because the Seacoast decision, as previously observed, was bottomed on L. Maxcy, then Seacoast was also clearly displaced by Interlachen. The owner's reliance upon Seacoast and its outdated logic is erroneous.
After the issuance of the panel opinion herein, and before the en banc oral argument, the Florida Supreme Court issued a decision involving section 192.042(1). In that decision, Collier County v. State, 733 So.2d 1012 (Fla.1999), the court was not dealing with the issue of the constitutionality of the substantial completion statute,[21] but rather with the validity of Collier County's "Governmental Services Fee Ordinance."[22] The ordinance attempted to recover lost tax dollars by imposing a "special assessment" or "fee" on real property improvements not subjected to ad valorem taxes because they were substantially completed only after January 1. The supreme court held the county's ordinance invalid for two reasons: (1) the ordinance did not impose a valid special assessment or fee, but rather an unauthorized, thus impermissible, tax;[23] and (2) the ordinance conflicted with the statutory ad valorem tax scheme including section 192.042(1), enacted by the legislature. Obviously county tax ordinances do not trump state general tax law; in the event of a conflict the state general tax law prevails.
It has been suggested to us that the supreme court's decision in Collier County v. State requires us to conclude that section 192.042(1) is constitutionaleven though the statute's constitutionality was not an issue (as the supreme court noted therein), or even discussed. Apparently the reasoning behind the suggestion is that the supreme court would not have expended its energies on explaining the effect of section 192.042(1) if it were unconstitutional, even in the absence of a constitutional challenge.
This suggestion, however, is contrary to long-established case law, scrupulously followed by the supreme court in Collier County, which holds that a statute must be presumed to be valid and must be given effect until it is judicially declared unconstitutional. Evans v. Hillsborough County, 135 Fla. 471, 186 So. 193 (1938); City of Sebring v. Wolf, 105 Fla. 516, 141 So. 736 (1932). In Colburn v. Highland Realty Co., 153 So.2d 731, 736 (Fla. 2d DCA 1963), the Second District Court of Appeal stated:
"The constitutionality of this law as it may affect the rights of the parties was not presented to the lower court, and is not now before this Court. At this point it is assumed, but not decided, that the law is a valid enactment." [emphasis supplied]
Because there was no constitutional challenge to section 192.042(1) in Collier County, the supreme court, following precedent, interpreted the effect of the statute on the ordinance. Certainly we cannot abdicate our function of judging the validity of the *348 statute because the supreme court properly discussed and applied it under the required assumption of its validity.
The additional suggestion has been made that section 192.042(1) is a "timing" statute and thus is valid as it is merely procedural in nature, part of the process of assessing, levying, and collecting taxes. Presumably the reasoning is that section 192.042(1) has no substantive effect, thus it is valid as being just a cog on the wheel of the legislative taxing scheme. Cited in support of this timing/merely procedural suggestion is the statement in Collier County, 733 So.2d at 1019 that the ordinance conflicts with the "method and timing" for valuation of property for ad valorem purposes.
In order to accept this proposition one must overlook the actual, major substantive effect of the statute: that it requires the substantive result of tax assessment valuation of certain properties on the annual taxing date at a figure far below that which the constitution commands, and results in the highly substantive, permanent loss of large sums in tax dollars, as evidenced by not only all we have previously stated, but by Collier County itself. While section 192.042(1) is a timing regulation, it is also a substantive one. But when all is said and done it is clear that whatever section 192.042(1) is, it is not any kind of regulation that secures fair market value (just valuation) of all property, as constitutionally mandated.
And so, we see by Interlachen, ITT Community, and Valencia Center that, except where the constitution specifically authorizes it, legislation which singles out properties or classifications of properties for treatment that brings about their tax assessment valuation at something other than fair market value violates article VII, section 4, Florida Constitution (1968). Section 192.042(1) does exactly that. We therefore grant the petition for rehearing en banc, withdraw the panel opinion to the extent it conflicts with this opinion, and affirm the decision of the circuit court holding section 192.042(1), Florida Statutes (1991) unconstitutional.[24]
SORONDO, J. (concurring)
I agree with the majority opinion that section 192.042(1) Florida Statutes (1991), is unconstitutional. I write separately to address the issue of the Appraiser's standing to raise a constitutional challenge to the statute in this case.
Fuchs and amicus curiae both argue that the Appraiser lacks standing to challenge the constitutionality of section 192.042(1). The panel opinion concluded that the Appraiser has standing because he falls within one of the recognized exceptions to the general rule that state officers and agencies lack standing to initiate litigation which attacks the constitutionality of a statute. This exception was explained by the Florida Supreme Court in Department of Educ. v. Lewis, 416 So.2d 455 (Fla. 1982), as follows:
State officers and agencies must presume legislation affecting their duties to be valid, and do not have standing to initiate litigation for the purpose of determining otherwise. In such a situation, the public officer or agency does not have a sufficiently substantial interest or special injury to allow the court to hear the challenge.
If, on the other hand, the operation of a statute is brought into issue in litigation brought by another against a state agency or officer, the agency or officer may defensively raise the question of the law's constitutionality.
Id. at 458 (emphasis added) (citations omitted). The en banc Court has adopted the original panel's analysis of this issue.
Fuchs and amicus curiae argue that the exception is not applicable because the Appraiser *349 raised the constitutional challenge in his Complaint, consequently, the argument goes, the issue was not raised "defensively." This argument is unpersuasive for two reasons. First, this position ignores the fact that this litigation did not begin in the Circuit Court. This litigation began when the taxpayer challenged the Appraiser's assessment at the Dade County Value Adjustment Board (VAB). There, the taxpayer argued that the property at issue was not "substantially complete" under the statute. The taxpayer prevailed. Pursuant to the provisions of sections 194.036 and 194.181(1)(b) and (2), Florida Statutes (1991), the Appraiser appealed by filing the Complaint at issue in the Circuit Court.[25] He was therefore a "plaintiff," filing a "complaint," only because of the appellate mechanism contemplated by the statute. In my view, the filing of the complaint in this case constituted nothing less than the Appraiser's defense of his tax assessment. This brought the Appraiser within the contemplated exception.
Second, as observed by the panel opinion, although the constitutional argument was pled in the complaint, the Appraiser began his presentation at trial by establishing nothing more than his compliance with the eight factors set out in section 193.011, Florida Statutes (1991), in making his assessment. See Bystrom v. Equitable Life Assurance Soc'y of U.S., 416 So.2d 1133 (Fla. 3d DCA 1982). The burden then shifted to the taxpayer to "overcome the property appraiser's assessment by excluding every reasonable hypothesis of a legal assessment." Robbins v. Summit Apartments, Ltd., 589 So.2d 460, 461 (Fla. 3d DCA 1991). The taxpayer sought to meet this burden by establishing that the property was not "substantially complete" as of January 1, 1992. The Appraiser defended against this argument by raising the constitutional issues which are at issue now.
More significant to my analysis of the Appraiser's standing is the so-called "public funds" exception. In Kaulakis v. Boyd, 138 So.2d 505 (Fla.1962), the Florida Supreme Court stated:
It has long been held that the general rule that a ministerial officer cannot in a judicial proceeding attack the validity of a law imposing duties on him is subject to the exception that such a law may be challenged where it involves the disbursement of public funds.
Id. at 507 (emphasis added). Fuchs and amicus curiae argue that this exception is not applicable in this case because there is no "disbursement" of public funds. Rather, the case involves the collection of such funds. This argument is also unpersuasive. In Barr v. Watts, 70 So.2d 347 (Fla. 1953), the Supreme Court, having observed that "chaos and confusion" would result if state officers and agencies were allowed to declare legislation unconstitutional, went on to clarify:
[There] is of course an exception to this ruleand that is, when the public may be affected in a very important particular, its pocket-book. In such a case the necessity of protecting the public funds, is of paramount importance, and the rule denying to ministerial officers the right to question the validity of the Act must give way to a matter of more urgent and vital public interest.
Id. at 351. Green v. City of Pensacola, 108 So.2d 897 (Fla. 1st DCA 1959).[26] Although *350 I have been unable to find a case which specifically equates the "disbursement" of public funds with the "collection" of same for purposes of establishing standing in the present context, it is absurd to conclude that standing would exist for one and not for the other. The language of the Supreme Court in Barr speaks of the overriding importance of "protecting the public funds." It is axiomatic that before government can "disburse," it must "collect." Indeed, although disbursing public funds is sometimes done whimsically and capriciously, collecting public funds is always serious business. Accordingly, even if the Appraiser had not raised the constitutional issue in a defensive posture, he had standing to raise it under the "public funds" exception.
NOTES
[1] Only the assessment of the building is at issue in the instant dispute.
[2] Section 192.042(1) provides that real property be assessed on January 1 of each year with the exception that "[i]mprovements or portions not substantially completed on January 1 shall have no value placed thereon."
[3] Section 195.062(1) provided that "platted lands unsold as lots shall be valued for tax assessment purposes on the same basis as any unplatted acreage of similar character until 60 percent of such lands included in one plat shall have been sold as individual lots."
[*] Judge Gersten did not hear oral argument, but participated in the decision.
[1] We do not disturb the original panel's correct conclusions that Robbins, the property appraiser, has standing to challenge the statute's constitutionality and properly did so.
[2] Land together with improvements thereon. Black's Law Dictionary 1382-83 (4th ed.1968).
[3] Art. VII, § 4, Fla. Const. (1968).
[4] In ITT Community Dev. Corp. v. Seay, 347 So.2d 1024, 1028 (Fla.1977), the supreme court put it this way:

"Democratic philosophy mandates that every taxpayer be treated consistently, and that everyone contribute his fair share, no more and no less, to the tax revenues."
Even totally vacant land, which receives far less governmental protection and services than incomplete improvements, is taxed at its fair market value and not at zero value.
[5] In fact, one county (Collier) attempted a partial redress of this inequity by establishing a "service fee" to be paid by the owner of zero valued improvements after their completion. The county's efforts were not successful. See Collier County v. State of Florida, 733 So.2d 1012 (Fla.1999), discussed in more detail later herein.
[6] There then follow three subparagraphs which provide for special treatment of (a) agricultural land, which is to be assessed only on the basis of its character or use; (b) certain tangible personal property, i.e., stock in trade and livestock, which may be assessed at a percentage of its value or exempted totally from taxation; (c) homestead property, which was to be assessed at its fair market value as of January 1, 1993, after which the assessment amount for each subsequent year is limited to low percentage increases. There are no provisions in the constitution for special treatment of incomplete improvements, and no provisions authorizing the legislature to enact legislation requiring such treatment.
[7] "The law is well settled that under Article VII, § 4 of the Florida Constitution a taxpayer's property must be assessed at just valuation or fair market value for ad valorem purposes." Calder Race Course, Inc. v. Overstreet, 363 So.2d 631, 633 (Fla. 3d DCA 1978).
[8] The land was assessed at $2,277,000. The land assessment is not an issue before us.
[9] The cost approach to the appraisal of real property basically involves a determination of the replacement (sometimes reproduction) cost of the improvements, less actual depreciation (if any), American Reliance Ins. Co. v. Perez, 689 So.2d 290 (Fla. 3d DCA 1997), to which the land value is then added. Calder Race Course, Inc. v. Overstreet, 363 So.2d 631 (Fla. 3d DCA 1978).
[10] Although Aeronautical Communications involved the assessment valuation of tangible personal property, the basic principles are the same as in valuing real property. See discussion of McNayr v. Claughton at Aeronautical, 219 So.2d at 104.
[11] Often referred to as "Pope's Law." Pope's Law (then section 193.271) was first held unconstitutional by the Dade County Circuit Court, nine years earlier. Segal v. Tax Assessor, 30 Fla. Sup. 32 (Fla. 11th Cir.Ct.1968). However, the losing property owner did not seek review thereof. Belatedly the state comptroller attempted to intervene for the purpose of appeal, but was rebuffed by the supreme court, which then did not pass on the validity of the statute. Dickinson v. Segal, 219 So.2d 435 (Fla.1969).
[12] As previously noted, these enumerated classes relate only to agricultural properties, certain tangible personal properties, and homestead properties, but not incomplete improvements.
[13] Culbertson v. Seacoast Towers East, Inc.[II], 232 So.2d 753, 756 (Fla. 3d DCA 1970).
[14] As will be discussed the Seacoast decision is no longer viable. However, the owner's arguments derived from Seacoast should be, and will be, laid to rest.
[15] To "secure," is to guarantee. See The American Heritage Dictionary of the English Language 1109 (2d college ed.1982).
[16] Which, once again, is why Collier County attempted, unsuccessfully, to recover some of the lost funds by way of a "service fee." Collier County v. State of Florida, 733 So.2d 1012 (Fla.1999).
[17] Then section 920, Comp. Gen. Laws, section 718, Rev. Gen. St. in L. Maxcy; then sections 192.063, 193.20, and 193.11(3), Fla. Stat. in Jasper.
[18] An ounce of history is often worth a pound of legal logic. At the time of L. Maxcy the Depression, in Florida and elsewhere, was in full swing, uncountable mortgages were being foreclosed (L. Maxcy itself involved a foreclosure action), and the New Deal was just getting under way. See Charlton W. Tebeau, A History of Florida 393-400 (1971)(Chapter 25 "The Depression and the New Deal)." As noted in L. Maxcy, 150 So. at 250, the there-challenged statute had been enacted in an attempt to encourage the development of horticulture, a leading business in the state. That these events had some effect on the decision is discernible from a reading of the case.
[19] Subsection (c) was later adopted to provide for tax limitations on homestead property.
[20] The Fourth District Court of Appeal somehow missed this conclusion of the supreme court and, ten years later, reached exactly the opposite conclusion, stating that the "constitutional change in 1968 is insignificant." Markham v. Yankee Clipper Hotel, 427 So.2d 383, 384 n. 3 (Fla. 4th DCA 1983). This overlooking of Interlachen led the Fourth District Court to conclude erroneously that the outdated Seacoast decision was still viable and controlling, thus resulting in its opinion upholding section 192.042(1). Markham, 427 So.2d at 384. The Fifth District Court of Appeal, in Hausman v. Bayrock Inv. Co., 530 So.2d 938 (Fla. 5th DCA 1988), followed Markham and Seacoast without discussing the arguments. 530 So.2d at 939.
[21] The court notes "Collier County does not challenge the constitutionality of the statutory valuation scheme, but asserts that the statutory scheme is unfair." 733 So.2d at 1015.
[22] Collier County Ordinance 98-25.
[23] Counties can levy only those taxes authorized by general law. Article VII, § 1(a), Florida Constitution.
[24] With the obvious exception of the language establishing January 1 of each year as the taxing date.
[25] Section 194.181 provides as follows: "(1) The plaintiff in any tax suit shall be: ... (b) The property appraiser pursuant to s. 194.036.(2) In any case brought by the taxpayer... the county property appraiser shall be party defendant. In any case brought by the property appraiser pursuant to s. 194.036(1)(a) or (b), the taxpayer shall be party defendant."
[26] Referring to the above quoted language from Barr, the First District Court of Appeal said: "It might be said with some justification that the expression of our Supreme Court ... is dictum in that the control of expenditure of public funds was not involved in that case. We perceive no reason, however, why the court should have qualified the general rule adhered to in that opinion by reiterating the exception last mentioned unless it was to again bring to the attention of the bench and bar that the exception remained a sound principle of law to be observed in those cases falling within its purview." Green, 108 So.2d at 901. I agree and note that the exception as set forth by the Supreme Court is not limited to "disbursements."